## S92A1383. DUNCAN v. DUNCAN.
(426 SE2d 857)

FLETCHER, Justice.

We granted the application for discretionary review in the present case in order to consider whether the trial court's award was supported by the evidence. We find that it was not and, accordingly, reverse the trial court.

The parties were married in March of 1981; appellee filed a petition for divorce in June of 1991; two children were born of the marriage and appellant adopted appellee's daughter from a previous marriage. Following a bench trial, the trial court entered an order granting the parties a divorce, requiring appellant to pay permanent alimony of $100 per week ($5,200 per year); to provide a wide variety of health and medical insurance coverage for the three children and be responsible for 90 percent of all such expenses that are not covered; to pay appellee's attorney fees in ten monthly installments of $150 per month; and to pay child support of 32 percent of $32,000 ($196.92 per week and $10,239.84 per year).

Although the evidence presented at trial, both documentary and testimonial, established that the total earnings from appellant's present three jobs will amount to, at most, $20,748 annually, the court concluded that, based upon appellant's testimony, his present annual income is $21,300. The trial court also found that appellant had previously had annual incomes of between $45,000 and $65,000 and went on to conclude that, as a result, appellant has an ability to earn at least $32,000 annually.[1] As indicated above, the trial court then used the $32,000 figure, rather than appellant's actual gross income, in determining the amount of child support appellant would be required to pay. As a result, for each of the first ten months following the entry of

---

[1] Despite such findings by the trial court, the record establishes that, from 1986 through 1989, appellant worked as a manager of fleet car sales for an Atlanta automobile dealership and earned, in salary and prizes, $47,325, $45,945, $52,833, and $44,300. In December of 1989, appellant was laid off and, in 1990, worked at four different jobs to earn a total of $22,700.

the court's order, appellant will be paying $1,436.65 in alimony, child support and attorney fees out of his actual gross monthly income of $1,729; thereafter, he will be paying $1,286.65 per month out of that same gross monthly income.

1. OCGA § 19-6-1 (c) provides that alimony is to be awarded in accordance with the needs of the party to whom it is awarded *and with the ability of the other party to pay*. Among the numerous factors to be considered in determining the amount of alimony, if any, that is to be awarded are the financial resources of each party, including their separate estates, earning capacity, and their fixed liabilities.[2] OCGA § 19-6-5 (a) (4) and (7). OCGA § 19-6-2 (a) (1) entrusts the grant of attorney fees to the sound discretion of the trial court, however, the statute directs that the court is to consider *the financial circumstances of both parties* in determining the amount of such fees, if any, that is to be awarded.

Finally, OCGA § 19-6-15 (b) (1) directs that computation of child support is to be based upon *gross income of the obligor* and subsections (b) (2) through (b) (4) detail what is to be considered by the trier of fact in arriving at the obligor's gross income. Once gross income has been determined, OCGA § 19-6-15 (b) (5) sets forth the guidelines that are to be used in determining what percentage of obligor's gross income is appropriate to award as child support depending on the number of children involved. Subsection (c) of that same Code section then provides a non-inclusive list of special circumstances which may warrant variations from the amount of child support indicated by the guidelines and specifically requires the trier of fact to make a written finding of special circumstances before such a variance will be permitted to stand.

In certain circumstances, our case law has permitted earning capacity rather than gross income to be used to determine the amounts of alimony, child support and attorney fees to award in domestic cases. However, numerous factors must go into a determination of a party's earning capacity; no single factor will be conclusive. While a party's past income is some evidence of his or her earning capacity, it is not the only such evidence. *Gordon v. Gordon*, 244 Ga. 21 (257 SE2d 528) (1979); *Odom v. Odom*, 239 Ga. 830 (239 SE2d 20) (1977).

Some of the other factors which must be considered are found in OCGA § 19-6-5 (a)'s list of factors which the factfinder is required to consider in determining the amount of alimony, if any, that is to be awarded. Others are found in OCGA § 19-6-15 (c)'s non-inclusive list of special circumstances which may justify a variation from the child support guidelines as to the amount of such support that is to be

---

[2] At the time of the final hearing, appellee was earning approximately $12,870 annually.

awarded. Still others are found in past cases in which earning capacity has been used rather than gross income in setting awards of child support, alimony, and attorney fees: the party's level of education; any specialized training or skill that the party may have; evidence of suppression of income; the party's assets and liabilities; and other funds available to the party from which these awards may be paid.[3]

2. Appellant is 34 years old, has a high school education, and has no special training or skills. He did have four successful years as a manager of fleet car sales for an Atlanta area automobile dealership before being laid off in December of 1989 due to a slow down in the automobile industry. However, when appellant sought similar employment after being laid off, his efforts were unsuccessful.[4] He is presently employed on a full-time basis as a warehouse supervisor for a book company and has two part time positions to help supplement his income. There is no evidence that appellant has attempted to suppress his income.

Appellant owns no interest in real estate; all of the property he received when the parties divided their property among themselves, with the exception of a bed, has either been repossessed or has already been sold in order to meet his temporary child support and alimony obligations.[5] His only remaining assets are worth approximately $200 and his miscellaneous debts total $13,400.

As a result, the trial court's determination that appellant has an ability to earn at least $32,000 annually is not supported by the evidence and the court's award, based as it was upon that determination, cannot stand.[6] As the case was tried to the bench rather than to a

---

[3] Accord *Wills v. Wills*, 215 Ga. 556 (111 SE2d 355) (1959) (physician working on a fellowship in neurology and $10,000 equity from sale of former home); *Neiman v. Neiman*, 223 Ga. 812 (158 SE2d 677) (1967) ($12,000 variance in income over the past five years but other funds available and owned considerable interests in family owned corporations); *McNally v. McNally*, 223 Ga. 246 (154 SE2d 209) (1967) (officer in the Air Force, two homes, and a net worth of $12,400); *Thomas v. Thomas*, 233 Ga. 916 (213 SE2d 877) (1975) (dentist, circumstantial evidence of suppression of income); *King v. King*, 239 Ga. 15 (235 SE2d 502) (1977) (ownership of four pieces of income producing property and circumstantial evidence of suppression of income); *Pierce v. Pierce*, 241 Ga. 96 (243 SE2d 46) (1978) (expectation of shortly receiving bachelor's degree, extensive mechanical and auto repair shop training); *Worrell v. Worrell*, 242 Ga. 44 (247 SE2d 847) (1978) (master's degree); *Gordon v. Gordon*, 244 Ga. 21 (257 SE2d 528) (1979) (Ph.D. in anthropology from Harvard).

[4] In 1990, appellant did work briefly for another automobile dealership in the position of manager of fleet car sales, however, he left that position when the owner of the dealership for whom he had worked from 1986 through 1989 rehired him as manager of fleet car sales. When the owner of that dealership died two months after rehiring appellant, appellant was again laid off by that dealership.

[5] Appellant is presently borrowing a vehicle from an acquaintance in order to get to and from his three jobs.

[6] We remind all involved of OCGA § 19-6-19 which provides a mechanism for the modification of child support and alimony based upon a change in the income and financial status of either former spouse or in the needs of the children.

jury, we remand the case to the trial court for the entry of an award that is supported by the evidence.

*Judgment reversed. Clarke, C. J., Hunt, P. J., Hunstein, J., and Judge W. J. Forehand concur; Benham and Sears-Collins, JJ., dissent.*

SEARS-COLLINS, Justice, dissenting.

I disagree with the majority's holding that the trial court's awards of alimony and child support are not supported by the evidence. When sitting as the trier of fact, as was the trial court in this case, a trial court is given wide latitude in awarding alimony and may consider a husband's ability to earn income. *Worrell v. Worrell,* 242 Ga. 44, 45-46 (2) (247 SE2d 847) (1978). In fact, based on earning ability, alimony may be awarded even though "the husband may be temporarily impoverished." Id. at 46. Here, the trial court found that the appellant had the ability to earn $32,000 per year. There is some evidence to support this finding, namely that for four of the five years preceding the parties' separation the appellant earned salaries ranging from a low of $44,259 to a high of $52,832. I thus must conclude that there is some evidence to support the trial court's awards of alimony and child support. In order to conclude that there is no evidence to support the trial court's award, the majority must offer some reason why the trial court could not have relied on the evidence of the appellant's earning ability in making its awards. The majority, however, has failed to offer any such explanation. Instead, the majority has weighed all the evidence, and, acting as the trier of fact, has found that it would have reached a different result than the trial court. This is not the function of an appellate court. The majority should not substitute its judgment for that of the trial court, when the trial court, and not this Court, had the opportunity to observe the credibility of witnesses, including the appellant, at a temporary alimony hearing, at a contempt hearing on the temporary alimony award, and finally at the trial of the case. For the foregoing reasons, I dissent.

I am authorized to state that Justice Benham joins in this dissent.

DECIDED MARCH 15, 1993.

*Hogan & Stearns, James D. Hogan, Jr.,* for appellant.
*Richard L. Moore,* for appellee.