A04A1138. WARD et al. v. WARD.
(601 SE2d 851)

PHIPPS, Judge.

Betty Patterson Ward (Patterson) filed this suit against Gordon Douglas Ward (Ward) and Ward Harris Properties, Inc. (WHP). Among other things, Patterson claimed that she and Ward had entered into a common law marriage resulting in the birth of one child and that Ward had placed title to the marital residence in his corporate alter ego, WHP. Patterson sought a transfer of title under various theories. The jury returned a verdict finding that no common law marriage existed between the parties but awarding Patterson child support which included an interest in the parties' residence. Following our grant of their application for discretionary appeal, Ward and WHP appeal the trial court's denial of their motions for judgment notwithstanding the verdict and new trial. We find no error in denial of the motions and affirm.

In her complaint, Patterson alleged that when she and Ward had entered into a common law marriage, they also had agreed that they

would live and work together and that any assets acquired by them would be owned equally, no matter how titled. Patterson asked for a divorce, for temporary and permanent child custody and child support, and for an equitable division of the parties' property. She also asked that WHP's corporate veil be pierced, that she be awarded a one-half interest in the parties' residence under theories of constructive trust or specific performance of contract, and that Ward's interest in the property be subjected to an award of alimony.

As temporary child support, the court awarded Patterson and the child temporary exclusive use and possession of the parties' residence. Ward was also ordered to pay $600 per month as temporary child support and $400 per month as temporary alimony.

In its verdict, the jury found that Ward had gross income of $2,526.83 per month and that Patterson had no monthly income. Finding that Ward had been paying $1,000 per month to Patterson and was financially able to continue doing so, the jury awarded Patterson $1,000 per month (about 40 percent of Gordon's gross monthly income) as child support. The jury also required that Ward provide "accident and sickness" insurance for the child; that any medical, dental, hospital or prescription drug expenses for the child be paid "50/50" by both Ward and Patterson rather than by "accident and sickness" insurance; and that Ward maintain $50,000 in insurance on his life for the benefit of the child as long as the child is entitled to receive child support.

The jury made the following additional requirements for the support of the child: "The defendant has the option to: (A) Sign over the property in question to Betty Patterson (Ward) and Matthew D. Ward or (B) Sell the property in question by a court appt. realtor and divide all proceeds 50/50 between plaintiff and defendant allowing plaintiff to live [on property] until sold." In accordance with the jury verdict, the court entered final judgment requiring defendants to convey title to the home and land to Patterson and the child as lump sum child support, or sell the property and divide the proceeds equally between Ward and Patterson.

Evidence introduced at trial showed that Ward was married before he entered into a relationship with Patterson and that his wife had died several years before he and Patterson began living together. Ward testified that WHP was formed during his former marriage, that the children of that marriage had always been the sole corporate shareholders, and that he had previously been president of the corporation but was no longer an officer. Ward introduced in evidence share certificates showing that his and his former wife's children were the owners of the stock in the corporation. Ward further testified that he had borrowed money from WHP to acquire title to a car he was reselling; that in payment for the car, he had received title to the

property in question; and that in lieu of repaying the borrowed money, he had transferred title to the property to WHP.

Undisputably, Ward engaged in various business endeavors through WHP and a number of other corporations. Patterson's testimony authorized the jury to find that Ward used these corporations only to avoid being sued personally, that he deposited monies generated by the corporations into his personal accounts, that no shareholders' or directors' meetings were ever held, and that no corporate books and records were ever maintained.

1. WHP contends that the trial court erred in denying its motion for j.n.o.v.

WHP argues that the jury did not award Patterson any interest in the parties' residence under any of the theories she advanced, so that it was not authorized to award property titled in WHP to satisfy a child support obligation owed by Ward. But one of the issues presented to the jury was whether WHP was Ward's mere alter ego. "Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another. [Cits.]"[1] Patterson argues that the evidence authorized the jury to find Ward to have been the equitable owner of the property under this theory. WHP does not dispute this argument. Its real objection, therefore, is to the form of the verdict. That objection was waived at trial.

2. Ward contends that the court erred in denying his motion for j.n.o.v.

Ward correctly argues that the jury was not authorized to require him to convey property to his child. In *Clark v. Clark*,[2] our Supreme Court held that an attempt by the jury to take a part of the father's property and award it to his children is contrary to Georgia law, as the father's responsibility for the support of his children does not extend to awarding them title to his property and he is not required to settle an estate upon them.[3] But in *Scherberger v. Scherberger*,[4] the Court sanctioned enforcement of a jury verdict requiring the father to sell a residence titled in his name and use part of the proceeds to purchase another residence for his wife and children to live until the youngest child reached the age of majority. And as recognized in *Arrington v. Arrington*,[5] a lump sum award of child support is authorized in Georgia. Therefore, the jury was authorized to require Ward to sell

---

[1] *Kissun v. Humana, Inc.*, 267 Ga. 419-420 (479 SE2d 751) (1997).

[2] 228 Ga. 838 (188 SE2d 487) (1972).

[3] Id. at 840 (1).

[4] 260 Ga. 635 (398 SE2d 363) (1990).

[5] 261 Ga. 547 (407 SE2d 758) (1991).

property which he equitably owned and actually controlled, and to pay one-half of the proceeds to Patterson as lump sum child support. Although the jury was not authorized to order Ward to convey an interest in the property to his child, he waived that objection by failing to object to the form of the verdict at trial.[6]

3. Ward contends that the trial court erred in denying his motion for new trial. He argues that the award of child support was excessive.

OCGA § 19-6-15 (b) (1) directs that computation of child support is to be based upon gross income of the obligor. . . . Once gross income has been determined, OCGA § 19-6-15 (b) (5) sets forth the guidelines that are to be used in determining what percentage of obligor's gross income is appropriate to award as child support depending on the number of children involved. Subsection (c) of that same Code section then provides a non-inclusive list of special circumstances which may warrant variations from the amount of child support indicated by the guidelines and specifically requires the trier of fact to make a written finding of special circumstances before such a variance will be permitted to stand.[7]

Under OCGA § 19-6-15 (b) (5), the range of percentages of gross income to be considered where, as here, one child is involved is 17 percent to 23 percent. Here, the jury awarded periodic child support in the amount of approximately 40 percent of the father's gross income. In making this award, the jury found that this upward variation from the percentage table was justified by the fact that the mother had no income. The jury also noted that the father's ability to pay the amount ordered as permanent child support was shown by the fact that he had been paying the same amount as temporary child support and alimony. Such an award was not improper under OCGA § 19-6-15.[8] And we cannot say that the amount awarded was palpably unreasonable or excessive; consequently, the trial court did not err in sustaining the verdict.[9]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

---

[6] See *Clifton v. Clifton*, 249 Ga. 831, 832 (2) (294 SE2d 518) (1982).

[7] (Emphasis omitted.) *Duncan v. Duncan*, 262 Ga. 872, 873 (1) (426 SE2d 857) (1993).

[8] Compare *Esser v. Esser*, 277 Ga. 97 (586 SE2d 627) (2003).

[9] See generally *Sanders v. Robertson*, 196 Ga. App. 739, 740 (1) (397 SE2d 26) (1990).

DECIDED JULY 8, 2004.

*Hewitt, Katz, Stepp & Wright, Jerry L. Stepp*, for appellants.
*W. Benjamin Ballenger*, for appellee.