## S07F1075. BANCIU v. BANCIU.
(652 SE2d 552)

HINES, Justice.

Alexandru N. Banciu ("husband") appeals his final judgment and decree of divorce ("decree") from Estera Banciu ("wife").[1] For the reasons that follow, the judgment is affirmed and the case is remanded to the trial court for action consistent with the opinion.

The husband and wife filed separate actions for divorce on July 12, 2005, after more than 16 years of marriage. They consented to consolidation of the actions, with the husband as plaintiff. Prior to filing for divorce, the wife filed a petition for relief under the Family Violence Act, which was resolved by a July 19, 2005 consent protective order. The protective order directed, inter alia, that until August 22, 2005, or until further order of the court, the wife was awarded sole and exclusive use of the family residence and temporary custody of the parties' three minor sons with the husband having visitation; the husband was ordered to pay $500 semi-monthly as temporary support for the wife and $900 semi-monthly as child support, such payments commencing August 1, 2005 and continuing through August 22, 2005, or until further order of the court.

On September 8, 2005, the parties entered into a consent temporary order having essentially the same child support terms as the protective order. Subsequently, the superior court held hearings on other issues, including distributions of proceeds from sold properties, which resulted in two orders. The first order, entered on January 12, 2006, found that the parties realized net proceeds of $121,435.98 from the sale of certain property and directed that a portion of the proceeds be used to pay off some outstanding mortgage loans and potential capital gains taxes, and that the remaining monies be divided equally between the parties. The second order, entered on January 31, 2006, which was a consent order, awarded the wife $70,000 as consideration for her interest in certain real property in Florida owned by the parties.

The divorce action was called for trial on August 28, 2006, but there was no trial on that date; instead the parties held conferences in an attempt to resolve the case.[2] The superior court believed that the case was "announced settled." Asserting that the parties had reached a settlement of all issues, in September 2006, the wife submitted to the superior court a proposed final judgment and decree,

---

[1] The husband filed an application for discretionary appeal in this Court, which was granted automatically under this Court's pilot project. See *Wright v. Wright*, 277 Ga. 133 (587 SE2d 600) (2003).

[2] The court had informed the parties that if an agreement was not reached, the case would be heard that day.

which she stated had been tendered to opposing counsel and the guardian ad litem and to which she had not received any objection or comment. But, the husband denied there was such an agreement, and the wife filed a motion to compel the settlement agreement. At the conclusion of a hearing on the motion, the superior court determined that it would conduct a bench trial on the issues of visitation, amount of child support, amount of alimony, the disposition of three remaining parcels of property, guardian ad litem fees, and attorney fees. Following a bench trial on November 21, 2006, the superior court entered a final judgment and decree on December 18, 2006. The decree awarded, inter alia, real and personal property; joint legal and physical custody of the minor children, with primary physical custody of the two older boys to the husband and primary physical custody of the youngest son to the wife; visitation; child support to be paid by the husband in the amount of $1,875 per month based upon findings that the husband's gross income was at least $90,000 per year or at least $7,500 monthly and that the wife's gross income was $325 monthly;[3] and $500 per month in alimony to the wife for a period of 36 months.

1. The husband contends that the superior court abused its discretion when it based the child support award on income imputed to him, and which was allegedly contrary to the evidence and without findings of fact, including that of gross income, sufficient to warrant such imputation. He argues that the only evidence of his income comes from his own testimony and documents which showed income of $4,000 per month as of the date of the bench trial, and that a figure above $48,000 per year is unsubstantiated speculation. But, that is not what the record shows.

The superior court made express findings of gross income regarding both parents. See former OCGA § 19-6-15; *Esser v. Esser*, 277 Ga. 97 (586 SE2d 627) (2003). As already noted, the court found that the husband's gross income was at least $90,000 per year or at least $7,500 monthly and that the wife's gross income was $325 monthly. As to the claim that there was no evidence to warrant an income figure in excess of $48,000, that is hardly the case.

The husband admitted on the stand that he made "thousands of dollars more a year" than the claimed $48,000. In regard to the complaint that the trial court used the husband's earning capacity in calculating the child support obligation, in certain circumstances, it has been held permissible to use earning capacity to determine the amount of child support to award in domestic cases; numerous factors

---

[3] It appears that the wife had some difficulty with English, which is not her native language, and was lacking in certain training and job skills; this determined income was derived from cleaning houses.

figure into the determination of earning capacity, including past income, level of education, specialized training or skill, evidence of suppression of income, assets and liabilities, and other funds available to the party from which the award may be paid. *Duncan v. Duncan*, 262 Ga. 872, 873-874 (1) (426 SE2d 857) (1993).

In this case, there was evidence of the husband's earning capacity far in excess of $48,000, and amply supporting the superior court's child support award. See *Smith v. Smith*, 281 Ga. 380, 384 (3) (637 SE2d 662) (2006). Such evidence included, inter alia, that the husband owned and was president of a stucco company, which company had gross earnings in 2005 of over $700,000, and gross earnings in excess of $700,000 by the time of trial in 2006; that some company workers were paid sums far in excess of that claimed as total income by the husband; that the husband had purchased a new truck in addition to the older Mercedes-Benz automobile he used as a personal vehicle; and that the parties had owned multiple parcels of real estate, including rental properties, two homes in Georgia, and a condominium in Florida with a purchase price of more than half a million dollars. In light of the husband's own testimony, ongoing business, the parties' lifestyle and historic spending, and the fact that the husband was the principal earner during the marriage, the superior court was understandably skeptical of the husband's stated income on his financial affidavits and was authorized to consider the husband's earning capacity in setting his child support obligation.

2. There is likewise no merit to the husband's contention that the superior court abused its discretion in awarding child support above the then applicable guidelines without findings of fact sufficient to justify such a deviation, and to his argument that the wife should have the burden of two-thirds of the child support because he has primary physical custody of two of the children.[4] Under the applicable OCGA § 19-6-15 (c) (6), the superior court had the authority to deviate from the child support guidelines set forth in former OCGA § 19-6-15 (b), if it found the presence of one or more special circumstances which made the presumptive amount of support inadequate. The superior court expressly found that special circumstances existed, namely shared custody of the minor children and the disparate incomes of the parties. And the evidence of record clearly supports the findings of these special circumstances so as to allow the superior court to decline to order payment from the wife to the husband and to deviate upward from the percentage range of gross income in assessing the

---

[4] The superior court considered the percentage range of gross income for three children and determined that the husband would pay child support of $1,875 per month which represented 25% of his determined monthly gross income of $7,500.

husband's child support obligation. *Walker v. Walker*, 248 Ga. App. 177, 178 (3) (546 SE2d 315) (2001).

3. The decree states that the husband's child support obligation is to commence on September 1, 2006, and that his ordered payment of alimony is to commence on October 1, 2006. The husband asserts that this amounts to ordering retroactive child support and retroactive alimony, which constituted abuses of discretion by the superior court. However, there is nothing in the decree to indicate that the stated commencement dates are anything other than clerical errors.[5] Such errors can be remedied by the superior court; the decree is to reflect that the support obligations at issue be prospective in regard to entry of the decree.

Inasmuch as the decree contains these clerical errors, the case is remanded to the superior court solely for the correction of such errors. *Sweat v. Sweat*, 281 Ga. 543, 545-546 (3) (641 SE2d 1) (2007).

*Judgment affirmed and case remanded with direction. All the Justices concur.*

DECIDED OCTOBER 29, 2007.

*Mary A. Prebula, Florence J. Lytle*, for appellant.
*Mark E. Layng*, for appellee.

---

[5] On appeal, the wife asserts that she is not seeking retroactive payment of either support obligation.