## S10A0384. HERRIN v. HERRIN.
### (696 SE2d 626)

HINES, Justice.

This Court granted the mother's application for discretionary appeal to consider the propriety of the superior court's upward modification of her child support obligation and its award of attorney fees in favor of her ex-husband after finding her in contempt. The modification was expressly premised upon the superior court's findings regarding the mother's earning capability. Examination of the record discloses that it is devoid of evidence that the mother had the ability or means to earn the amount found by the superior court and upon which it based the award of increased child support. The record also fails to support the superior court's finding that the mother had the ability to pay the ordered attorney fees; consequently, we reverse and remand.

Phyllis L. Herrin ("mother") and James L. Herrin ("father") were divorced by final judgment and decree in April 2004; the decree incorporated a settlement agreement between the parties. In December 2005, the superior court entered an order awarding the father primary physical custody of the couple's three minor sons. At that time, the mother was ordered to pay child support of $300 per month beginning January 15, 2007. The superior court found that the mother was able to earn $12 per hour or $2,064 gross income per month because she had recently obtained her real estate license, and the court gave her a one-year period to find full-time employment and to build her realtor client base. In 2006 and for part of 2007, the mother was employed by a real estate company, averaging about

$3,100 in income per month, but by late 2007 she was no longer employed by that company.

In April 2008, the father filed the present petition for modification of child support and an application for contempt, alleging that the mother was selling real estate for two companies, was also employed as an office administrator earning in excess of $3,100 per month, and was financially capable of paying child support within the child support guidelines for three children as well as paying one-half of the minor children's extracurricular and school activities. Following an evidentiary hearing on September 4, 2008, the superior court issued an order on December 9, 2008, in which it concluded that there had been a substantial and material change in the mother's income since the December 2005 order, which warranted an upward modification of her child support obligation and directed that her monthly payments be increased to $975.74. The superior court did so after finding, inter alia, that the mother had an active license with a real estate agency; that in addition to selling real estate, the mother was employed as an office administrator for a dental group earning $13 per hour, working four days a week; that the mother was underemployed and was capable of earning more income; that she had given birth to an illegitimate child but had not sought child support from the father of that child in order not to lose the downward adjustment to her support obligation; and that the mother did not pay rent, utilities, or a car note because she lived with her parents in their basement. Furthermore, the superior court found her in wilful contempt for failing to pay $150 of child support which was due on March 15, 2008; for failing to submit an income deduction order to her employer prior to April 2008; and for failing to pay one-half of the uncovered medical expenses for the children. Finally, the superior court ordered the mother to pay $2,500 to the father's attorneys due to her contemptuous behavior, finding her to have the ability to pay such amount. Subsequently, the court denied the mother's motion for reconsideration and for a new trial.

In certain circumstances, earning capacity rather than gross income may be used to determine child support, and while a party's past income is some evidence of earning capacity, it alone is not conclusive, but must be considered along with other relevant circumstances. *Duncan v. Duncan*, 262 Ga. 872, 873 (1) (426 SE2d 857) (1993). Many other factors need to be examined in order to determine earning capacity, including a party's level of education and any specialized training or skill; whether there is any evidence of the suppression of income; the presence of assets and liabilities; and the existence of other funds available to the party from which the award may be paid. *Banciu v. Banciu*, 282 Ga. 616, 618 (1) (652 SE2d 552) (2007). In order to sustain an award of child support premised upon

earning capacity, there must be evidence that the parent then has the ability to earn an amount sufficient to pay the award of support; otherwise, the award cannot stand. *Duncan v. Duncan,* supra at 874 (2). Here, the evidence was undisputed that by the time of the 2008 hearing and modification award, the mother's income and earning capacity had dramatically decreased from what was noted and projected in the 2005 order and what actually occurred in 2006 and 2007. It was uncontroverted that in 2008, the mother was earning $13 per hour at her job in the dental office for a gross income of approximately $1,500 per month, of which $1,000 went toward her monthly day care bills for her infant; her hours at the dental practice could not be increased because the economic downturn had adversely affected the practice. The mother was unable to pursue a career selling real estate because of the depressed real estate market and her inability to fund out-of-pocket expenses required of a real estate sales agent. Indeed, at the modification hearing, the father acknowledged the difficult state of the economy and agreed that it had had a negative impact even on his ability to earn. The mother had a high school education and had attended some technical school, but had no specialized training, education, or marketable skill, other than her training in dental assisting and real estate sales, upon which any increased earning capacity could credibly be based. Nor was there any evidence that she had any means to acquire future education or training. As noted, she and her infant daughter were living in her parents' home; she had no retirement fund, no savings, no checking or other bank account, and owned no real estate. In fact, her only assets were her 2002 car and her clothing.[1] There was simply no evidence from which the superior court could have found that the mother was able to earn in excess of her then salary.

Moreover, there was no evidence to support a finding that the mother was willfully underemployed or that she was voluntarily suppressing her income to avoid child support payments. The mother testified that she searched for a job every night on the internet, reviewed the classified advertisements every Sunday, and had gone on numerous interviews, but had been unable to procure a higher paying job. In regard to the mother not then legally pursuing the biological father of her illegitimate child for child support and the trial court's ascribing to her the motive of suppressing her income,

---

[1] The mother's situation was in sharp contrast to that of the father, who testified that he was remarried to an attorney, was co-owner of the business at which he worked, had an individual income of $125,000 per year, a retirement plan worth $90,000, $25,000 in other personal savings, and a checking account with a balance of about $2,500; he resided in a home for which he paid $850,000, and in conjunction with his wife and his business owned numerous vehicles, including a Mercedes, a Corvette, a Suburban, a pickup truck, and a motor home.

the evidence does not support such a finding. The mother's testimony and the reasonable inferences therefrom reveal that, even with the assistance of her own father who was fronting the attorney fees so that she could defend herself in the present action, she did not have the financial or emotional reserves to address other potential litigation. She intended to reimburse her father for the attorney fees already incurred, and felt that she could pursue only one legal battle at a time.

As noted, in regard to the award of attorney fees, the superior court expressly found that the mother had the ability to pay such amount. Inasmuch as this finding was related to and arguably premised on the superior court's unfounded determinations regarding earning capacity, the award of attorney fees likewise cannot stand.

Accordingly, the judgments entered in regard to the modification are reversed and the case is returned to the superior court for the entry of an award that is supported by the evidence. *Duncan v. Duncan*, supra at 874 (2).

*Judgments reversed and case remanded. All the Justices concur.*

DECIDED JUNE 28, 2010.

*Dupree & Kimbrough, Hylton B. Dupree, Jr.*, for appellant.
*Robert K. Abbott, Jr.*, for appellee.