## S13F0735. FRANKLIN v. FRANKLIN.
(751 SE2d 411)

MELTON, Justice.

Elisha Franklin ("Wife") and Elijah Franklin ("Husband") were divorced pursuant to a June 3, 2011, Final Decree. The parties have three minor children together, and the trial court awarded primary

custody to Husband and visitation rights to Wife. The trial court further ordered Wife to pay $1,518 per month in child support (based on a finding that her monthly income was $8,833.33 per month/$106,000 per year) and found that the parties had agreed to a final division of marital assets prior to the final divorce hearing.[1] On June 28, 2011, Husband filed a Motion for Disposition of Real Property, representing that, although the parties had previously agreed to sell their marital residence, the parties had been unable to agree on a date upon which Wife would move out of the residence in order to allow for the house to be sold. On June 30, 2011, Wife filed a motion for new trial, and on September 13, 2011, Husband filed a contempt motion based on Wife's failure to pay child support. On September 30, 2011, Wife filed a motion for reconsideration and a contempt motion based on Husband's alleged violation of the visitation provisions of the trial court's Final Decree. Following an October 4-5, 2011 hearing, in an October 28, 2011 order, the trial court denied Wife's contempt motion and granted Husband's contempt motion, requiring Wife to pay $4,555 in child support. In a separate ruling, the trial court ordered that the proceeds of the sale of Husband and Wife's house be equally divided between them. This Court granted Wife's application to appeal pursuant to Supreme Court Rule 34 (4), by which this Court shall grant a timely application from a final judgment and decree of divorce that is determined by the Court to have possible merit. For the reasons that follow, we reverse the trial court's finding as to Wife's gross monthly income and remand the case to the trial court to make a proper finding based on the evidence, and we affirm the remainder of the trial court's challenged rulings on appeal.

1. Wife contends that the trial court erred in determining that her gross monthly income was $8,833.33 for the purpose of determining her child support obligations. We agree.

"In the appellate review of a bench trial, this Court will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses." (Citations and punctuation omitted.) *Frazier v. Frazier*, 280 Ga. 687, 690 (4) (631 SE2d 666) (2006). "The standard by which findings of fact are reviewed is the 'any evidence' rule, under which a finding by the trial court supported by any evidence must be upheld." (Citation omitted.) *Southerland v. Southerland*, 278 Ga. 188 (1) (598 SE2d 442) (2004).

---

[1] The parties represented that the only issues to be resolved at the final hearing were custody and child support.

Here, the record reveals that there is no evidence that Wife earned an average monthly income of $8,833.33. Indeed, although the trial court found in its Final Decree that Wife's "gross monthly income [was] $8,833.33 per month, based on [Wife's] testimony that her annual gross income in 2010 was $106,800 and in 2009 was $106,200[,]" the record shows that Wife never actually testified in this manner. To the contrary, Wife specifically testified that her income was *not* anywhere near these figures used by the trial court. The actual exchange between Wife and Husband's counsel at the final divorce hearing where the $106,000 figures are mentioned is as follows:

Q: And you make approximately a hundred six thousand a year?
A: No. I make 4500 a month.

Husband's counsel then goes on to refer to $106,200 and $106,800 figures that appear on Line 7 of Wife's Schedule SE Self-Employment Tax worksheets of IRS form 1040 from 2009 and 2010. However, Wife's testimony, and the forms themselves, make clear that those figures have nothing to do with Wife's annual income:

Q: Okay. [Line] Number 7 [on the Schedule SE Self-Employment Tax worksheet from 2010] says it's a hundred and six thousand.

Wife then reads directly from the document itself, which clarifies that the figure represents, not income, but the maximum "amount of combined wages and self-employment earnings subject to Social Security tax[, which is] the 6.2 percent portion of the 7.65 percent railroad retirement. Tier 1 tax for 2010, [$106,800]." Similarly, Wife's testimony relating to her 2009 Schedule SE Self-Employment Tax worksheet, and the worksheet itself, revealed that the $106,200 figure that appeared on Line 7 of that form represented the maximum "amount of combined wages and self-employment earnings [that would be] subject to Social Security tax" had she actually earned that amount. Again, however, none of Wife's testimony showed that she ever earned that amount.

Moreover, the documentary evidence relating to Wife's gross income also revealed that she never earned the $106,000 that would have been subject to Social Security tax. Wife's income tax returns showed that her average annual gross income for 2009 and 2010 from her two businesses was $13,568.50, not $106,000. Even without taking Wife's reported business expenses into account for each of

those years, her businesses did not make $106,000. In addition to this, her Domestic Relations Financial Affidavit and Child Support Worksheets and Schedules indicated that her gross monthly income was $1,108.25 per month.

Furthermore, there was no evidence presented to show that Wife could have been earning more money or that she was deliberately suppressing or hiding any income. In short, because there is no evidence in the record to support the trial court's conclusion that Wife's income could have been $8,833.33 per month, we must reverse the trial court's finding on this issue and reverse its ruling with respect to the child support award that was based on this erroneous finding.[2] See, e.g., *Herrin v. Herrin*, 287 Ga. 427 (696 SE2d 626) (2010). "As the case was tried to the bench rather than to a jury, we remand the case to the trial court for the entry of an award that is supported by the evidence." *Duncan v. Duncan*, 262 Ga. 872, 874-875 (2) (426 SE2d 857) (1993).

2. Wife next contends that the trial court erred by granting the parties a divorce through its June 3, 2011 Final Decree without having first resolved all of the issues relating to the division of the parties' marital property.[3] We disagree.

The record reveals that, at the final divorce hearing, Husband's counsel affirmatively represented to the court that the only issues that needed to be resolved at the final hearing were custody and child support. See *Rank v. Rank*, 287 Ga. 147, 149 (2) (695 SE2d 13) (2010) ("Attorneys are officers of the court, and their statements in their place, if not objected to, serve the same function as evidence") (citation and punctuation omitted). Wife made no objection to this representation, and cannot now be heard to complain that the trial court erred by concluding in its final order that there was no need for the court to make a division of marital property because the "parties ha[d] already made a division as to all marital property." See id. at 149 (2).

3. Lastly, Wife claims that the trial court erred by finding her in contempt for failing to pay the child support that had accrued during

---

[2] We note that this ruling is based solely on the evidence that was presented to the trial court at the final divorce hearing, and not based on any additional evidence that Wife presented to the trial court at the motion for new trial hearing, as a party "cannot rely on evidence presented *after* trial to show that the trial court erred in [making] a decision the court had to make based on the evidence it had at that time." (Emphasis in original.) *Teasley v. State*, 293 Ga. 758, 763 (3) (b) (749 SE2d 710) (2013).

[3] Wife specifically does not challenge on appeal the trial court's ruling on Husband's Motion for Disposition of Real Property, in which the trial court ordered the parties, after the entry of the Final Decree, to sell the marital residence and divide the proceeds from the sale equally between them based on a prior agreement that the parties had purportedly reached.

the time that her motion for new trial was pending. Specifically, Wife argues that, under OCGA § 9-11-62 (b), her filing of a motion for new trial acted as an automatic supersedeas that prevented the trial court from enforcing its judgment with respect to Wife's child support obligation. We disagree.

OCGA § 9-11-62 (b) states that "the filing of a motion for a new trial . . . shall act as supersedeas *unless otherwise ordered by the court.*" (Emphasis supplied.) Here, the trial court specifically stated in the Final Decree:

> In the event of an appeal of this order, the provisions of this order shall constitute a new temporary order (superseding all prior temporary or final relief to the contrary) during the pendency of such appeal.

By specifying that a new temporary order would take effect in the event of an appeal, the trial court properly ensured that Wife's obligation to pay child support would remain in force and effect even if Wife challenged the Final Decree. See, e.g., *Walker v. Walker*, 239 Ga. 175, 176 (236 SE2d 263) (1977) (temporary order "binds the parties pending decision and appeal of the final judgment" and "is enforceable through contempt proceedings pending review of the divorce judgment"). We find that the trial court retained the authority to hold Wife in contempt for failing to meet her child support obligations as they existed in the temporary order while she challenged the trial court's Final Decree.

*Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur.*

DECIDED NOVEMBER 18, 2013.

*Celeste F. Brewer*, for appellant.
Elijah Franklin, *pro se*.