**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 23, 2020**

# In the Court of Appeals of Georgia

A20A0546. CALLOWAY-SPENCER v. SPENCER.

REESE, Presiding Judge.

The trial court issued a final divorce decree between Ebony Calloway-Spencer ("Wife") and Frederick M. Spencer ("Husband"). Wife appeals, arguing that the trial court erred in equitably dividing a townhome and calculating child support. For the reasons set forth infra, we affirm in part and reverse in part.

The parties began dating in or around September 2002. In March 2003, the parties held a marriage ceremony in Florida, but they did not obtain a marriage certificate until July 2007.

In February 2002, before the parties started dating, Wife signed a purchase agreement for a new construction townhome in Florida, and submitted a deposit of $1000. Construction was completed in August 2003, and Wife closed on the

townhome. Wife was the only one listed on the warranty deed and mortgage deed. Wife also received a forgivable loan from the local government for completing a homebuying program and as an incentive to move into the area. Husband did not provide any funds toward the down payment or participate in the program. Husband testified that he painted the townhome, and that the only reason he was not on the deed or mortgage was so that they could qualify for the loan-forgiveness program. The parties moved into the townhome together in August 2003, approximately one month after their first child was born and soon after closing.

While they were living at the townhome, Husband deposited his paycheck into a joint bank account from which Wife paid the mortgage. The parties moved out of the townhome to Georgia in the summer of 2008. In 2008, Wife began renting the townhome to her cousins. The rent was paid into a separate account, and the mortgage payment was automatically withdrawn from that account. Wife only charged enough rent to cover the mortgage and homeowner association fees.

Husband filed a complaint for divorce in November 2017. The parties settled as to child custody and the division of certain property, but proceeded to a bench trial to determine the remaining issues in dispute, which included the division of the townhome and child support. The court found that the townhome was "a gift to the

marriage by [Wife]" and ordered that Wife pay Husband 50 percent of the appraisal value. We granted Wife's application for discretionary review, and this appeal followed.

"Whether an item of property can legally constitute a marital asset is a question of law for the court, and whether a particular item of property actually constitutes a marital asset may be a question of fact for the trier of fact to determine from the evidence."[1] "[T]he standard by which findings of fact are reviewed is the 'any evidence' rule, under which a finding by the trial court supported by any evidence must be upheld."[2] With these guiding principles in mind, we now turn to Wife's claims of error.

1. In two related claims of error, Wife argues that the trial court erred in finding that she gifted the townhome to the marital unit, thus transforming the townhome into marital property subject to equitable division.

> In order to equitably divide marital property, the trial court must
> first classify the disputed property as either marital or non-marital. . . .

---

[1] *Flory v. Flory*, 298 Ga. 525, 526 (783 SE2d 122) (2016) (citation, punctuation, and emphasis omitted).

[2] *Shaw v. Shaw*, 290 Ga. 354, 354 (1) (720 SE2d 614) (2012) (citations and punctuation omitted).

3

Only the real and personal property and assets acquired by the parties during marriage is subject to equitable property division. Property that once may have been separate — such as gifts, inheritances, or pre-marital property — may be converted into a marital asset if a spouse takes action manifesting an intent to transform that separate asset into marital property. A spousal gift of non-marital property to the marital unit transforms the separate property into marital property and makes it subject to equitable division.[3]

If an asset received both marital and non-marital contributions, and was not later gifted to the marital unit, then the court should apply the "source of funds" rule.[4] The source of funds rule

provides that a spouse contributing non-marital funds toward the acquisition of property is entitled to an interest in the property in the ratio of the non-marital investment to the total non-marital and marital investment in the property. [T]he spouse who contributes non-marital funds and the marital unit that contributes marital funds each receive a proportionate and fair return on their investment. A typical application of this rule involves the equitable division of the parties' respective interests in a marital home which was brought to the marriage by one spouse as his or her separate property.[5]

---

[3] *Flory*, 298 Ga. at 526 (citations and punctuation omitted).

[4] See *Dixon v. Dixon*, 352 Ga. App. 169, 174 (834 SE2d 309) (2019).

[5] Id. (citations and punctuation omitted).

4

"That is because the house is not to be considered as a single unit, but as two separate units — one nonmarital and one marital."[6]

In this case, the trial court found that Wife gifted the townhome to the marital unit because the parties moved into the home prior to marriage, they continued to reside there once married, and Husband contributed to a joint bank account from which the mortgage was paid. Even under an "any evidence" standard,[7] we disagree such facts supported a finding that Wife gifted the townhome to the marital unit. Wife never took an action after marriage manifesting an intent to transform her separate property into a marital asset, such as transferring a "full, partial, or joint ownership in the property to" Husband.[8] Instead, the facts presented in this case called for an application of the source of funds rule, where one spouse separately bought the house

---

[6] *Horsley v. Horsley*, 268 Ga. 460 (490 SE2d 392) (1997).

[7] See *Shaw*, 290 Ga. at 354 (1).

[8] Id. (investment accounts established with inherited funds transformed into marital property when husband gave wife ownership interest in the accounts); see *Lerch v. Lerch*, 278 Ga. 885, 886 (1) (608 SE2d 223) (2005) (husband transformed separate property into marital property by deeding home to his wife and himself as tenants in common); *Dixon*, 352 Ga. App. at 173-174 (2) (same).

before the marriage and provided for the down payment, and the marital unit contributed to the mortgage.[9]

Accordingly, we reverse the trial court's finding that the Wife gifted the townhome to the marital unit, and remand for an application of the source of funds rule.[10] After applying the rule and determining the marital and non-marital portions, the court may equitably divide the marital portion of the property between the parties.[11]

2. Wife argues that the trial court erred in ordering her to pay Husband 50 percent of the appraised value of the townhome, rather than 50 percent of the equity. That is, because there was still a mortgage on the townhome and Wife was responsible for the mortgage, she contends that the trial court's order resulted in Husband receiving a substantial majority of the equity in the townhome.

---

[9] See *Hubby v. Hubby*, 274 Ga. 525, 526-527 (556 SE2d 127) (2001) (applying source of funds rule when husband used separate funds for down payment but the parties used marital funds to pay mortgage); *Horsley*, 268 Ga. at 460 (holding that the trial court should apply source of funds rule when the parties lived in a house the husband bought before the marriage, but the parties used marital funds to pay the mortgage).

[10] See *Hubby*, 274 Ga. at 526-527.

[11] See id.

"While each spouse is entitled to an allocation of the marital property based upon his or her equitable interest therein, an award is not erroneous simply because one party receives a seemingly greater share of the marital property. An equitable division of marital property does not necessarily mean an equal division."[12]

We need not address this particular equitable division because, given our holding in Division 1, the trial court will recalculate the marital portion of the townhome and equitably divide that portion. The trial court should be cognizant on remand, however, that it will need to account for the mortgage on the property if it intends to make an equal division of the marital portion.

3. Wife argues that the trial court erred in determining, for child support purposes, that Husband's monthly income was $4,465. She contends that this finding is not supported by the evidence.

Husband is a schoolteacher. The trial court found that Husband's monthly income was $4,465, or $53,580 per year, which matched the amount on Husband's financial affidavit. Husband's W-2, however, showed a gross income of $58,288.41, and Husband testified at trial that he made $60,000 annually and that his income on

---

[12] *Driver v. Driver*, 292 Ga. 800, 801-802 (2) (741 SE2d 631) (2013) (citation omitted).

7

his W-2 was accurate. Husband's counsel, in arguing for alimony, also contended that Husband's income was $60,000.

We will not disturb a trial court's factual findings regarding a party's income unless clearly erroneous.[13] "The standard by which findings of fact are reviewed is the 'any evidence' rule, under which a finding by the trial court supported by any evidence must be upheld."[14] Husband's financial affidavit, although contradicted, supports the trial court's income determination.[15] Accordingly, the trial court did not clearly err in calculating Husband's income.[16]

4. Wife argues that the trial court erred in declining to impute income to Husband during the summer. She contends that, as a teacher, Husband does not work during the summer and that he could earn extra income during these months.

---

[13] See *Lutz v. Lutz*, 302 Ga. 500, 502 (2) (807 SE2d 336) (2017).

[14] *Franklin v. Franklin*, 294 Ga. 204, 205 (1) (751 SE2d 411) (2013) (citation and punctuation omitted).

[15] See *Ellis v. Ellis*, 290 Ga. 616, 617 (1) (724 SE2d 384) (2012) ("[T]he trial court is authorized to resolve conflicts in the evidence.") (citation omitted).

[16] See id.

"[T]he trial court is empowered to impute income for willful or voluntary unemployment or underemployment."[17] In determining whether a parent is willfully unemployed or underemployed, the court may consider, among other things, "[t]he parent's past and present employment" and "[t]he parent's education and training."[18]

At trial, Husband testified that he was paid on a twelve-month schedule for his work during the ten-month school year. He testified that there was no guarantee that he could get a summer teaching job, as he did not have seniority at the school, and that he devoted some of the summer to training and professional development. Additionally, the court noted that schools did not "have the same number of positions available in the summer as they [did] during the school year." Given Husband's testimony, the trial court did not err in declining to impute income to Husband during the summer months.

5. Wife argues that the trial court erred in failing to apply a downward deviation in child support, because she testified that she had been keeping the children slightly more than 50 percent of the time.

---

[17] *Friday v. Friday*, 294 Ga. 687, 689 (1) (755 SE2d 707) (2014) (citing OCGA § 19-6-15 (f) (4) (D)).

[18] OCGA § 19-6-15 (f) (4) (D) (i) & (ii).

"[T]he current child support guidelines are premised on a rebuttable presumption that each parent should contribute to the financial support of their child in the same proportion as that parent's income relates to the sum of the parents' incomes, *without* regard to the amount of time the child spends with each parent."[19] A court may deviate from the presumptive amount of child support "when special circumstances make the presumptive amount of child support excessive . . . due to . . . the child residing with both parents equally."[20] However,

> in order to grant any deviation, the trial court must find that the application of the presumptive amount of child support would be unjust or inappropriate and that the best interest of the child for whom support is being determined will be served by deviation from the presumptive amount of child support.[21]

In this case, the trial court awarded joint physical custody and did not deviate from the presumptive amount of child support. After a review of the record and child support worksheet, we conclude that "[t]he trial court did not abuse its discretion in

---

[19] *Hamlin v. Ramey*, 291 Ga. App. 222, 224 (1) (661 SE2d 593) (2008) (emphasis in original).

[20] OCGA § 19-6-15 (i) (2) (K) (i).

[21] *Willis v. Willis*, 288 Ga. 577, 578 (1) (707 SE2d 344) (2010) (punctuation omitted); see OCGA § 19-6-15 (c) (2) (E) (iii).

declining to make a deviation to the presumptive amount of child support based on parenting time."[22]

*Judgment affirmed in part and reversed in part, and case remanded. Markle and Colvin, JJ., concur.*

---

[22] *Willis*, 288 Ga. at 579 (1); see *Hamlin*, 291 Ga. App. at 225 (1).