**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**September 27, 2021**

# In the Court of Appeals of Georgia

A21A0760. LOCKHART v. LOCKHART.

DOYLE, Presiding Judge.

In this discretionary appeal, Markiyas Anaz Lockhart ("the Husband") appeals from a final order in a divorce case awarding his former wife, Sharaye Donielle Lockhart ("the Wife"), sole legal custody and primary physical custody of their four minor children, along with child support, alimony, and attorney fees. The Husband does not challenge the custody award, but argues that the trial court erred by (1) improperly imputing income to him and accounting for certain child care expenses not actually incurred by the Wife, (2) failing to consider the Wife's income from the maternal grandmother, (3) awarding attorney fees without identifying a statutory basis or making required findings, and (4) awarding alimony absent the Husband's ability to pay it. For the reasons that follow, we vacate and remand with direction.

As a threshold matter, we note that this case was tried in a bench trial.

In the appellate review of a bench trial, this Court will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. The standard by which findings of fact are reviewed is the "any evidence" rule, under which a finding by the trial court supported by any evidence must be upheld.[1]

So viewed, the evidence shows that prior to divorcing in September 2020, the Wife and Husband had been married for seventeen years and had six children together. Four of the children were minors at the time of the divorce. During their marriage, the Wife generally did not work outside the home, and the Husband worked in the automotive industry, typically either fixing or towing vehicles.

In 2018, the Husband moved out of the home and relocated to Las Vegas, Nevada. After leaving, the Husband did little to support the family, and the Wife lacked steady income and struggled financially, soon moving to a rented residence paid for by her mother, Barbara Grice. The Wife eventually got a job at a childcare

---

[1] (Citations and punctuation omitted.) *Franklin v. Franklin*, 294 Ga. 204, 205 (1) (751 SE2d 411) (2013).

facility, earning $13 per hour for 30 to 40 hours a week. She also received a half-tuition discount on childcare for her three younger children at the same facility.

In the three years leading up to his 2018 departure, the Husband's annual earnings ranged from approximately $58,000 to $61,000 in the towing industry. After moving to Las Vegas, the Husband's income faltered; he had a job driving a bus for the city that paid $13 per hour, but he was terminated after he was arrested for a child abandonment claim filed by the Wife. At the time of the hearing on the divorce, the Husband was working odd jobs as a day laborer, making approximately $15 per hour. He explained that due to the COVID-19 pandemic, he had trouble finding stable work. The Husband had applied for unemployment benefits of $181 per week, but had not yet received payments because of a backlog from the pandemic.

Based on this evidence from the hearing, the trial court entered a final order awarding the Wife primary physical custody and sole legal custody of the four minor children. The trial court also ordered the Husband to pay $2,076[2] in monthly child support to the Wife, based on $4,000 gross monthly income imputed to the Husband and $2,253 gross monthly income attributed to the Wife, as well as the cost of the

_____

[2] This amount was scheduled to reduce to $1,957 per month in June 2021 to account for one child reaching the age of majority.

Wife's work-related child care expenses. The court also awarded $20,000 in lump sum alimony, paid at a rate of $800 per month.[3] Finally, the court awarded the Wife $1,500 in attorney fees to be paid by the Husband. The Husband filed an application for discretionary review, which this Court granted, giving rise to this appeal.

1. The Husband contends that the trial court erred in its child support calculation by imputing $4,000 of monthly income to him and by incorrectly calculating the Wife's cost of work-related child care. We agree.

(a) *The Husband's Imputed Income*. OCGA § 19-6-15 (b) provides the process for calculating a parent's child support obligation. To begin, the court determines the monthly gross income of the parents; here, the Husband challenges the trial court's imputed monthly income amount of $4,000, or $48,000 annually.

> When imputing income, the court or the jury shall take into
> account the specific circumstances of the parent to the extent known,
> including such factors as the parent's assets, residence, employment and
> earnings history, job skills, educational attainment, literacy, age, health,
> criminal record and other employment barriers, and record of seeking
> work, as well as the local job market, the availability of employers

---

[3] Until the $20,000 alimony award was paid, the Husband's total award of child support and alimony amounted to $34,512 annually. After June 2021, this would be reduced to $33,084.

willing to hire the parent, prevailing earnings level in the local community, and other relevant background factors in the case.[4]

The trial court based its determination of the Husband's imputed income primarily on his earnings from the three years from 2015 through 2017 when he was employed as a tow truck driver. It is undisputed that during those years, the Husband's gross income ranged from approximately $58,000 to $61,000. But after he left in 2018, the Husband had difficulty establishing the same income in Las Vegas. He tendered pay stubs for various jobs he held in Las Vegas in 2018 and 2019, explaining that he had obtained a steady job as a bus driver making $13 per hour, but he was terminated after he was arrested as a fugitive on the Wife's child abandonment claim.[5] He held another job in 2019 making $15 per hour. Since that time, he had difficulty finding regular work, and the COVID pandemic had hampered his efforts further. At the time of the final hearing in 2020, the Husband was working temporarily as a day laborer.

Further, there was no evidence that the Husband had any significant assets, nor that he suppressed his income. There was undisputed evidence that he had leftover

---

[4] OCGA § 19-6-15 (f) (4).

[5] The claim was later dismissed.

5

debt from buying the Wife jewelry for their anniversary in 2017 and investing in a time-share property in Florida that was in collection after he defaulted on the loan.

Based on this evidence, the trial court found that the Husband's imputed income was $48,000 annually. Although this figure accounted for the Husband's earnings history until he moved in 2018, it was not consistent with the Husband's testimony and pay stubs regarding the remainder of 2018 and 2019.

> [W]hile a party's past income is some evidence of earning capacity, it alone is not conclusive, but must be considered along with other relevant circumstances. Many other factors need to be examined in order to determine earning capacity. . . . In order to sustain an award of child support premised upon earning capacity, there must be evidence that the parent *then has the ability to earn an amount sufficient to pay the award of support*; otherwise, the award cannot stand.[6]

The trial court awarded child support amounting to more than $24,000 per year based on imputed income of $48,000, which income was nearly double the amount the Husband testified he earned from 2018 up through the 2020 hearing ($13 per hour as a laborer or bus driver, i.e., approximately $27,000 per year). Thus, when considering all relevant factors, the evidence of the Husband's ability to pay $24,000

---

[6] (Citation omitted; emphasis supplied.) *Herrin v. Herrin*, 287 Ga. 427, 428-429 (696 SE2d 626) (2010).

in child support on approximately $27,000 of income was not supported by the evidence at the hearing.[7] Accordingly, absent evidence of the Husband's *present* ability to earn $48,000 and ability to pay $24,000 annually in child support, this portion of the award cannot stand. "[Because] the case was tried to the bench rather than to a jury, we remand the case to the trial court for the entry of an award that is supported by the evidence."[8]

(b) *Child support worksheet*. The Husband also argues that the trial court erred by calculating the amount of child support based in part on the Wife's work-related child care expenses. At the final hearing, the Wife initially testified that she paid $480 in weekly child care expenses, and her attorney had included that figure on the child support worksheet as a work-related child care cost.[9] But on cross-examination, the Wife clarified that she actually paid only half of that amount because she worked at

---

[7] See *Duncan v. Duncan*, 262 Ga. 872, 873 (1) (426 SE2d 857) (1993) ("[N]umerous factors must go into a determination of a party's earning capacity; no single factor will be conclusive. While a party's past income is some evidence of his or her earning capacity, it is not the only such evidence.").

[8] Id. at 874-875 (2).

[9] See generally OCGA § 19-6-15 (h) ("The additional expenses for . . . work related child care costs shall be included in the calculations to determine child support.").

the daycare center, and her attorney conceded that the child support worksheet needed to be adjusted. Nevertheless, the final award appears to incorporate the incorrect figure from the child support worksheet,[10] and the final award does not appear reduced from that amount. Accordingly, this portion of the award is vacated and remanded for recalculation.

2. The Husband also contends that the trial court erred by failing to include in the Wife's income the support she received from her mother in the form of housing and car assistance. At the final hearing, the Wife explained that her mother had begun paying monthly rent of $1,445 for the Wife and children after they moved out of the marital residence. The trial court calculated the Wife's gross income to be $2,253, based on her work at the day care center. This amount did not include the rent payments made by the grandmother, and the Husband argues that it should be imputed to the Wife's income.

But as explained by the Wife, she had not received this support from her mother before the Husband left, and it was a stopgap effort made by the grandmother

---

[10] The child support worksheet lists a total adjustment for work-related child care expenses as $1,919.67 monthly, i.e., $480 per week, shared between the parents on a pro-rata basis. The actual amount spent by the Wife, to be shared by the parents, is half of the $480 weekly figure, according to the Wife's testimony on cross-examination.

so that the Wife and children would avoid living in a family shelter. As the finder of fact, the trial court was entitled to weigh this evidence and determine how it should factor in as a reliable source of income to the Wife.[11] The Wife's testimony that the grandmother's payments were not permanent supports a determination that the grandmother's rent payments should not be considered income to the Wife for purposes of calculating child support.[12] Accordingly, we discern no basis for reversing this aspect of the order.

3. The Husband also challenges the trial court's award of attorney fees to the Wife. As he correctly points out, the trial court's order does not specify a statutory basis, nor does it make factual findings in support of the award. Thus, we vacate the award and remand.

In divorce and alimony cases, a trial court may award attorney fees under OCGA § 19-6-2 (a) (1) after "consider[ing] the financial circumstances of both parties." In this regard, such an award is not premised on a party's wrongdoing;

_____

[11] See *Daniel v. Daniel*, 358 Ga. App. 880, 886 (1) (a) (856 SE2d 452) (2021) ("[I]t was for the trial court to determine whether a party's own representations regarding her income were credible. . . .").

[12] Cf. *Dodson v. Walraven*, 318 Ga. App. 586, 588-589 (1) (734 SE2d 428) (2012) (imputing income based on family generosity was error due to lack of evidence).

rather, "it is to be made with the purpose of ensuring effective representation of both spouses in an action arising out of a divorce."[13] Findings of fact regarding the relative financial circumstances of each party thus are prerequisites to an award under OCGA § 19-6-2.[14]

Similarly, when awarding fees under OCGA § 9-15-14, the court "must limit the fees award to those fees incurred because of the sanctionable conduct."[15] Thus, "'lump sum' or unapportioned attorney fees awards are not permitted in Georgia."[16] "[I]f a trial court fails to make findings of fact sufficient to support an award of attorney fees under either OCGA § 19-6-2 or § 9-15-14, the case must be remanded to the trial court for an explanation of the statutory basis for the award and any findings necessary to support it."[17]

---

[13] (Punctuation omitted.) *Cason v. Cason*, 281 Ga. 296, 299-300 (3) (637 SE2d 716) (2006).

[14] See *Amoakuh v. Issaka*, 299 Ga. 132, 134 (3) (786 SE2d 678) (2016).

[15] (Punctuation omitted.) *Brewer v. Paulk*, 296 Ga. App. 26, 31 (2) (673 SE2d 545) (2009) (punctuation omitted).

[16] Id.

[17] (Punctuation omitted.) *Thrasher-Starobin v. Starobin*, 299 Ga. 12, 13 (785 SE2d 302) (2016) (punctuation omitted). See also *Trotman v. Velociteach Project Mgmt., LLC*, 311 Ga. App. 208, 214 (6) (715 SE2d 449) (2011) (this Court will vacate and remand for further fact-finding if "the trial court's order, on its face[,] fails

10

4. Finally, the Husband challenges the award of $20,000 in alimony to be paid at a rate of $800 per month for 25 months in addition to the monthly child support obligation. Under OCGA § 19-6-1 (c), "alimony is authorized, but is not required, to be awarded to either party in accordance with the needs of the party and the ability of the other party to pay. In determining whether or not to grant alimony, the court shall consider evidence of the conduct of each party toward the other." The trial court did not make explicit findings regarding the alimony award,[18] but in light of our ruling in Division 1 regarding the Husband's imputed income and ability to pay, we vacate the alimony award and remand for further evaluation by the trial court.

*Judgment vacated and case remanded with direction. Reese and Brown, JJ., concur*.

---

to show the complex decision making process necessarily involved in reaching a particular dollar figure and fails to articulate why" it awarded one amount of fees rather than another under OCGA § 9-15-14) (punctuation omitted); *Gilchrist v. Gilchrist*, 287 Ga. App. 133, 133-134 (1) (650 SE2d 795) (2007) (a judgment devoid of findings supporting an award under OCGA § 9-15-14 "*must* be vacated and the case *must* be remanded for reconsideration") (punctuation omitted; emphasis in original).

[18] With respect to the Husband's conduct, there was uncontroverted evidence that the Husband left the family, and there was evidence of two incidents of physical violence by the Husband against the Wife: according to a teenage child, the Husband once "dragged" the Wife out of the door and "shook" her on another occasion. There was little other evidence of the parties' conduct over the course of their marriage.

11