In the Supreme Court of Georgia

Decided: July 5, 2016

S15G1896. JACKSON v. SANDERS.

HUNSTEIN, Justice.

We granted certiorari in this child support modification action to consider the construction of a particular provision of our child support statute, OCGA § 19-6-15 (f) (4) (B), and its application in the context of the facts presented below. This provision is addressed to modification proceedings in which a parent "fails to produce reliable evidence of income," thus impeding the trial court's ability to fairly and reasonably calculate and allocate the parties' respective child support obligations. We agree with the Court of Appeals that it was within the trial court's discretion to apply OCGA § 19-6-15 (f) (4) (B) but that doing so required the court to utilize the increment prescribed thereunder – an "increase . . . of at least 10 percent per year of [the obligor's] gross income" – in calculating the modified support obligation. Accordingly, we affirm the judgment of the Court of Appeals.

In November 2001, Appellant Doug Jackson ("Father") and Appellee Lisa Sanders ("Mother") divorced in Florida. The final judgment and decree of divorce required Father to pay Mother $1,005 per month for the support of their infant son, based on Father's then-current annual salary of $250,000. Subsequently, both parties relocated to the Atlanta area, and a decree was entered in Cobb Superior Court in 2007, incorporating the same child support requirement.

Subsequently, Father moved for modification of custody and child support, and Mother counterclaimed, seeking an upward modification of child support. The trial court held a bench trial in March 2014 and thereafter entered a final order granting Mother's motion for directed verdict on the custody modification and granting Mother's request for an upward modification of child support. Regarding child support, the trial court found that Father "was not forthcoming with proof of his gross income and did not provide sufficient information to determine his gross income." Specifically, the trial court found that the evidence Father presented was by turns incomplete, inconsistent, inaccurate, and not credible. Accordingly, the court determined that it was proper to apply OCGA § 19-6-15 (f) (4) (B), which provides:

2

When cases with established orders are reviewed for modification and a parent fails to produce reliable evidence of income, such as tax returns for prior years, check stubs, or other information for determining current ability to pay child support or ability to pay child support in prior years, and the court or jury has no other reliable evidence of such parent's income or income potential, the court or jury may increase the child support of the parent failing or refusing to produce evidence of income by an increment of at least 10 percent per year of such parent's gross income for each year since the final child support order was entered or last modified and shall calculate the basic child support obligation using the increased amount as such parent's gross income.

Having found that Father had failed to produce reliable evidence of his income, the court looked to the undisputed evidence that Father's annual income at the time of the original 2001 child support order was $250,000 and imputed an increase of 4% per year for each of the 13 years since then, to arrive at a current imputed annual income of $380,000. Using this number, together with the undisputed evidence of Mother's annual income and certain other undisputed amounts from the child support worksheet, the trial court calculated Father's child support obligation at $3,994 per month.

On appeal, the Court of Appeals, in a divided whole court opinion,

vacated and remanded on this issue.[1]  The Court of Appeals' three-judge

plurality – joined by one additional judge, who concurred in judgment only –

concluded that the trial court did not abuse its discretion in finding that Father

had failed to produce reliable evidence of his gross income and in thus resorting

to OCGA § 19-6-15 (f) (4) (B).  Jackson v. Sanders, 333 Ga. App. 544 (2) (773

SE2d 835) (2015).  The plurality also held, however, that "once the trial court

exercised its discretion and chose to apply OCGA § 19-6-15 (f) (4) (B), it failed

to calculate [Father's] income as mandated by that statute."  Id. at 553.

Specifically, it held,

> the trial court erred by only applying a four percent incremental
> increase to calculate [Father's] child-support obligation. Suffice it
> to say, the application of OCGA § 19–6–15(f) (4) (B) undoubtedly
> results in an extremely harsh penalty for parents who fail to produce
> reliable evidence of their incomes. But when the language of a
> statute is "plain and susceptible to only one natural and reasonable
> construction, courts must construe the statute accordingly." And
> OCGA § 19–6–15 (f) (4) (B) plainly provides that when a parent
> fails to produce reliable evidence of his or her gross income, the
> trial court has the discretion to determine whether such a Draconian
> penalty is warranted.

Id. at 553-554.  The appellate court therefore vacated the child support award

---

[1]The Court of Appeals also reversed or vacated various other portions of the
trial court's order, none of which are at issue on certiorari.

4

and remanded for the trial court "to consider whether the application of OCGA § 19–6–15 (f) (4) (B) is still warranted, and if so, to recalculate [Father's] child-support obligation using the formula set forth in that statute." Id. at 554. The dissent, on the other hand, opined that, because Father had adduced some reliable evidence of his income, OCGA § 19-6-15 (f) (4) (B) was inapplicable, and the trial court should simply have used its enlightened judgment to calculate Father's gross income based on the evidence that was before it. Id. at 565-566.

We granted certiorari to address the proper construction and application of OCGA § 19-6-15 (f) (4) (B). We consider questions of statutory construction under a de novo standard of review. Hankla v. Postell, 293 Ga. 692, 693 (749 SE2d 726) (2013). Once we have construed the statute, however, we must, in determining its proper application, defer to the trial court's credibility determinations and uphold its factual findings unless they are clearly erroneous. Autrey v. Autrey, 288 Ga. 283 (2) (702 SE2d 878) (2010).

Under our well-established rules of statutory construction, we

presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the

5

English language would.

(Citations and punctuation omitted.)  Deal v. Coleman, 294 Ga. 170, 172-173 (751 SE2d 337) (2013).  In our interpretation of statutes, we thus look to the text of the provision in question and its context within the larger legal framework, to discern the intent of the legislature in enacting it.  See id.; OCGA § 1-3-1 (a), (b).

The first clause of OCGA § 19-6-15 (f) (4) (B) makes clear that it applies only in child support modification actions.  The text goes on to create two conditions precedent to the applicability of the provision: (1) a parent's failure to produce "reliable evidence of income" and (2) the absence of any other "reliable evidence of such parent's income or income potential."  Id.  The text provides a non-exhaustive list of examples of the types of evidence that might serve the purpose of establishing the parent's income – tax returns and check stubs – and specifies that what is sought is information regarding the parent's current or past ability to pay child support.  Id.  If these two conditions precedent are met, the text provides, the trier of fact "may" resort to the remedy of "increas[ing] the child support of th[at] parent . . . by an increment of at least 10 percent per year of such parent's gross income for each year" since the last

child support order was entered and "shall" calculate the modified support amount utilizing this increment. Id.

We first address the question of whether application of the prescribed increment – "at least 10 percent per year of such parent's gross income" – is required or merely authorized once the conditions precedent have been met. In isolation, the provision itself is less than clear on this point, because it first states that the trier of fact "may" utilize the prescribed increment but goes on to provide that the trier "shall" calculate the modified child support obligation using this amount. Notable in this regard is the phrasing of the subsection immediately preceding OCGA § 19-6-15 (f) (4) (B), which addresses the absence of reliable evidence of income in an initial child support proceeding: in this situation, "gross income for the current year shall be determined by imputing gross income based on a 40 hour workweek at minimum wage." (Emphasis added.) OCGA § 19-6-15 (f) (4) (A). Unlike with subparagraph (B), there is no question about the application of the designated formula in this subparagraph (A).

This contrast indicates that OCGA § 19-6-15 (f) (4) (B) was intended to be permissive rather than mandatory in nature. That is, if the two conditions

7

precedent are satisfied, the trier of fact has the discretion to utilize the prescribed

formula as a proxy for the missing evidence. If the trier chooses to resort to this

proxy, however, it is required to utilize the prescribed increment – "at least ten

percent" – and is not at liberty to select a lower increment, as the trial court did

here. This construction not only gives effect to the distinction in phrasing

between subparagraph (A) and subparagraph (B), but is also the only cogent

way to give meaning both to the permissive phrase "the court or jury <u>may</u>

increase the child support" and to the subsequent phrase "and <u>shall</u> calculate the

basic child support obligation using the increased amount." (Emphasis added.)

Id.[2]

The remaining question is the proper construction of the conditions

precedent, which both hinge on the meaning of the phrase "reliable evidence of

income." We begin by noting that OCGA § 19-6-15 (f) (4) (B) is situated

within the subsection of the child support statute that defines "gross income,"

---

[2]It also makes sense that the formula prescribed for use in initial child support actions would be mandatory, given that if the trier had no reliable evidence of a parent's income in making its initial child support determination, it would be compelled to make use of some proxy therefor. By contrast, in a modification proceeding, there will always be some modicum of evidence of the parent's past income – from which the then-current child support obligation had previously been determined – and thus at least some baseline number from which to proceed.

the starting point for the child support calculation. See OCGA § 19-6-15 (b) (1). Thus, clearly, the "income" referred to in subsection (f) (4) (B) is gross income. "Gross income" is defined as "all income from any source . . . whether earned or unearned." Id. at (f) (1) (A). "Reliable evidence" of such "income" must, then, consist of credible evidence from which a trier can determine a parent's total income from all sources.

Appellant's suggestion that documentation of some indeterminate portion of a parent's total income suffices to insulate the parent from the reach of subsection (f) (4) (B) is untenable. The clear intent of the subsection is to provide for a proxy – which is also in the nature of a penalty – for situations in which the parent's failure to cooperate impedes the court's ability to determine how appropriately to modify child support. Subsection (f) (4) (B) thus serves not only a functional purpose – in establishing a formula for fixing the parent's gross income – but also a potentially disciplinary purpose – in mandating the use of a significant increment, potentially resulting in a substantial increase in the parent's obligation. Its utility as a tool for trial courts and as a deterrent to non-cooperation by parents would be severely undercut if it were possible to avoid its application by producing documentation establishing only a fraction of the

9

parent's total income.

Accordingly, we hold that the trier of fact may utilize OCGA § 19-6-15 (f) (4) (B) where it determines that (1) the parent has failed to produce, and (2) there is not otherwise available, credible evidence establishing a significant portion of the parent's total gross income as defined in the statute. If the trier of fact determines that these conditions precedent have been satisfied, it will have the discretion to utilize the prescribed increment in determining the modified child support amount. If it elects not to do so, then it may turn to the methods it ordinarily employs in determining a parent's gross income from incomplete information. See, e.g., Brogdon v. Brogdon, 290 Ga. 618 (2) (723 SE2d 421) (2012) (trial court properly determined father's gross income by reference to evidence of his expenses, cash withdrawals, and personal use of his business account); Harris v. Snelgrove, 290 Ga. 181 (3) (718 SE2d 300) (2011) (trial court properly determined mother's gross income by extrapolating from information about her assets, her earning capacity given her specialized skills, her expenses, and other "relevant circumstances"); Banciu v. Banciu, 282 Ga. 616 (1) (652 SE2d 552) (2007) (having concluded that father's income on financial affidavit was understated, trial court properly considered father's

10

earning capacity as gleaned from his ongoing business and history of expenses and lifestyle).

Having thus construed OCGA § 19-6-15 (f) (4) (B), and having reviewed the evidence of record, we agree with the Court of Appeals that the trial court did not abuse its discretion in concluding that Father had failed to present reliable evidence of his gross income, and we affirm its disposition vacating and remanding for the trial court to reassess whether to exercise its discretion to apply subsection (f) (4) (B) as we have herein construed it.

Judgment affirmed. All the Justices concur.