**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 20, 2021**

# In the Court of Appeals of Georgia

A21A0875. FRANCO v. EAGLE.

PIPKIN, Judge.

Appellant Pablo Franco appeals from the final judgment and divorce decree dissolving his marriage to appellee Cheryl Eagle, arguing that the trial court erred by imputing his income for the purposes of calculating his child support obligations, by awarding Eagle attorney fees, and by equitably dividing the value of certain real property. For the reasons that follow, we now affirm in part and reverse in part.

The record shows that Franco and Eagle were married in July 2001 and had three sons during the course of the marriage. The parties separated in September 2017, and Franco filed a petition for divorce in March 2018. After mediation, the parties consented to a temporary order concerning most issues pertaining to custody and visitation and later agreed that the temporary order should be incorporated into the final

judgment and divorce decree. The parties were unable to reach an agreement concerning certain financial issues, including calculation of Franco's income, child support, and the division of certain real property, and these matters proceeded to a bench trial. Following trial, during which both parties testified, the trial court granted Franco's petition for divorce; among other matters set out in the extensive final judgment and attached child support worksheets, the trial court found that, for the purpose of determining the parties' child support obligations, Franco's gross monthly income was $10,000 and Eagle's was $5,168. Additionally, the trial court divided the marital assets of the parties, including real properties partially owned by Franco, as well as one piece of property deeded to his brother. Lastly, citing both OCGA §§ 19-6-2 and 13-6-11, the trial court ordered Franco to pay $8,100 in attorney fees. We granted Franco's application for discretionary appeal to review these rulings.

1. Franco first argues that the trial court erred by imputing $10,000 in gross monthly income to him,[1] which, he contends, resulted in the improper calculation of his child support obligations and an improper award of attorney fees. We disagree.

_____

[1] On his financial affidavit submitted to the court, Franco listed a gross monthly income of $4,333; Eagle requested that the trial court impute Franco's income at $16,528 a month.

2

"In the appellate review of a bench trial, we will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. But when a question of law is at issue, we review the trial court's decision de novo." (Citation and punctuation omitted.) *Daniel v. Daniel*, 358 Ga. App. 880, 881 (858 SE2d 452) (2021).

(a) "In Georgia, determining each parent's monthly gross income is the first step that a court must take in calculating child support under our child support guidelines[,]" (punctuation omitted) *Cousin v. Tubbs*, 353 Ga. App. 873, 880 (3) (840 SE2d 85) (2020), and a trial court conducting a bench trial must determine and make a written finding of the monthly gross income of both the custodial and noncustodial parent. See OCGA § 19-6-15 (b), (c) (2) (C). Gross income includes "all income from any source, . . . whether earned or unearned," including income from self employment. OCGA § 19-6-15 (f) (1) (A) (iii). Pursuant to OCGA § 19-6-15 (f) (1) (B),

[i]ncome from self-employment includes income from, but not limited to, business operations, work as an independent contractor or consultant, sales of goods or services, and rental properties, less ordinary and reasonable expenses necessary to produce such income. Income from self-employment, rent, royalties, proprietorship of a business, or joint

ownership of a . . . limited liability company . . . is defined as gross receipts minus ordinary and reasonable expenses required for self-employment or business operations.

Further,

[i]n general, income and expenses from self-employment or operation of a business should be carefully reviewed by the court or the jury to determine an appropriate level of gross income available to the parent to satisfy a child support obligation. Generally, this amount will differ from a determination of business income for tax purposes.

OCGA § 9-6-15 (f) (1) (B) (ii).

In addition to the foregoing, "[g]ross income may include imputed income, if applicable." OCGA § 19-6-15 (b) (1). Pursuant to OCGA § 19-6-15 (f) (4) (A), gross income may be imputed

if a parent fails to produce reliable evidence of income, such as tax returns for prior years, check stubs, or other information for determining current ability to pay child support or ability to pay child support in prior years, and the court or the jury has no other reliable evidence of the parent's income or income potential.

As to Franco's monthly income, the trial court made the following findings:

The Wife served the Husband with discovery requests, and he failed to properly respond to same. Although this divorce action has been pending

4

since March of 2018, it appears that the Husband only recently provided a portion of the documents requested by the Wife. It further appears that the Husband's testimony conflicted with at least a portion of the documents produced and that inadequate evidence was provided as to the Husband's income and transactions involving property in his possession or control. In addition, the Court notes that the Husband co-mingled his business and personal accounts resulting in all of the accounts apparently being used for personal use. Upon considering all the evidence presented and the testimony provided, the Court finds the Husband's income to be Ten Thousand Dollars ($10,000.00) per month.

Franco argues that the trial court erred by imputing $10,000 per month gross income to him because, he says, he produced reliable evidence of income – the type of evidence mentioned in OCGA § 19-6-15 (f) (4) (A) – in the form of tax returns and 1099 statements for tax years 2015, 2016 and 2017, and 1099s and bank records for 2018.

However, interpreting identical language in the portion of the statute dealing with imputed income when deciding modifications to child support, see OCGA § 19-6-15 (f) (4) (B), our Supreme Court has explained that there are two "conditions precedent to" imputing income under OCGA § 19-6-15 (f) (4): "(1) a parent's failure to produce 'reliable evidence of income' and (2) the absence of any other 'reliable evidence of such parent's income or income potential." *Jackson v. Sanders*, 299 Ga.

332, 334 (788 SE2d 387) (2016).[2] Nothing in the subsection (f) (4) (A) suggests that production of the type of evidence mentioned as *examples* of reliable evidence of income forecloses a court from imputing income. Moreover, as stated above, OCGA § 19-6-15 (f) (1) (B) (ii) specifically provides that "[i]n general, income and expenses from self-employment or operation of a business should be carefully reviewed by the court or the jury to determine an appropriate level of gross income available to the parent to satisfy a child support obligation. *Generally, this amount will differ from a determination of business income for tax purposes.*" (emphasis supplied). Thus, the statute contemplates that, in some cases concerning self-employment income, tax returns alone might not be sufficient to determine gross income for the purposes of calculating child support.

Here, the evidence adduced at the bench trial shows that Franco worked as a carpenter and remodeled homes; he established an LLC, Innovation Renovations, through which he conducted his business. During the bench trial, he introduced jointly filed tax returns for the years 2015, 2016 and 2017, and 1099 statements and an UBER

---

[2] Because the relevant language of OCGA § 19-6-15 (f) (4) (A) is nearly identical to that used in OCGA § 19-6-14 (f) (4) (B), we may assume the two provisions mean the same thing. See *Lanthrop v. Deal*, 301 Ga. 408, 442 (III) (C) (901 SE2d 867) (2017).

driving summary for 2018. He also submitted bank statements, which showed deposits and withdrawals for both business and personal expenses.

While the trial court did not specifically use the term "reliable evidence of income," the court did make specific findings concerning the reliability and the adequacy of the evidence Franco produced. More specifically, the trial court found that Franco had only produced a portion of the financial information requested by Eagle; that his testimony conflicted with at least some of the documents he produced; that he provided inadequate evidence as to his income and transactions involving property in his possession and control; and that he co-mingled his business and personal accounts.[3] As our Supreme Court has explained in construing the phrase "reliable evidence of income" found in subsection (f)(4)(B), "documentation of some indeterminate portion of a parent's total income [does not] suffice[] to insulate the parent from the reach of

---

[3] Franco does not appear to specifically challenge these findings, arguing instead that his tax returns and 1099s constituted reliable evidence of income, precluding the application of subsection (f)(4)(A). In any event, the transcript from the bench trial shows that Franco did not timely produce certain documents in response to discovery requests and that, due to the fact that certain documents were not provided sooner, it was difficult to ascertain whether he provided all the requested documents. Further, there was evidence produced at trial that, among other things, Franco had not disclosed all of his real estate holdings or sales, and that the amount of some of his personal expenditures seemed to be at odds with his stated income.

subsection (f) (4) (B)." *Jackson*, 299 Ga. at 336. "[I]t was for the trial court to determine whether a party's own representations regarding . . . income were credible, and we will not disturb the trial court's factual findings in this regard if there is any evidence to support them." *Daniel*, 358 Ga. App. at 886 (1) (b).

(b) Franco also argues reversal is required because subsection (f) (4) (A) requires the trial court to

> take into account the specific circumstances of the parent to the extent known, including such factors as the parent's assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, health, criminal record and other employment barriers, and record of seeking work, as well as the local job market, the availability of employers willing to hire the parent, prevailing earnings level in the local community, and other relevant background factors in the case.

Although the trial court did not specifically mention these considerations in its order, neither party requested that the trial court make specific findings of fact, and nothing in subsection (f) (4) (A) requires the trial court to do so in the absence of a party's request. Compare OCGA § 19-6-15 (b) (8), 19-6-15 (c) (E) (findings of fact required when trial court deviates from the presumptive amount of child support). Further, "in the absence of a contrary showing, the trial court will be presumed to have

8

followed the law." (Citation and punctuation omitted.) *Dallow v. Dallow*, 299 Ga. 762, 777 (4) (791 SE2d 20) (2016). Accordingly, the trial court did not err in imputing Franco's gross income in order to calculate his child support obligation.

2. Franco argues that the trial court's alleged error in imputing income to him also requires reversal of the trial court's award of attorney fees under OCGA § 19-6-2, which requires consideration of the financial circumstances of the parties. See OCGA § 19-6-2 (a) (1). However, inasmuch as we have affirmed the trial court's finding of imputed income, this contention likewise fails. Moreover, the trial court also awarded attorney fees under OCGA § 13-6-11, and Franco has not challenged the award of fees under that section. Accordingly, the award of attorney fees is affirmed.

3. Lastly, Franco argues that the trial court erred by finding that real property located at 1959 McAfee Place, Decatur, Georgia, was part of the marital estate and should be equitably divided between the parties. Although the parties' testimony was in dispute concerning whether loan funds from a marital property were used to purchase the property, the evidence was undisputed that Eagle's name was never on the deed to the property and it was likewise undisputed that the property was deeded to Franco's brother in 2012, long before the divorce action was filed. Our Supreme Court has made it clear "[t]he law of contracts and titles is respected in divorce cases."

*Armour v. Holcombe*, 288 Ga. 50, 52 (1) (701 SE2d 169) (2010). "Therefore, property that has been conveyed to a third party is not subject to equitable division absent a showing of fraudulent transfer." *Gibson v. Gibson*, 301 Ga. 622, 625 (1) (8021 SE2d 40) (2017). The record shows that Eagle did not make any efforts, either before or during the divorce litigation, to have the conveyance to Franco's brother set aside as fraudulent, and the trial court did not make a finding that the property had been fraudulently transferred. Accordingly, the trial court erred in equitably dividing the value of this property between the parties, and we must reverse that part of the final judgment.

*Judgment affirmed in part, reversed in part. Miller, P. J., and Hodges, J., concur.*