**SECOND DIVISION
RICKMAN, C. J.,
MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 16, 2022**

# In the Court of Appeals of Georgia

A22A0252. BERG v. BEAVER.

PIPKIN, Judge.

Appellee Rebecca Beaver filed a petition to modify the custody, visitation, and child support provisions of the divorce decree and final judgment dissolving her marriage to Appellant Brian Berg. Following a hearing, the trial court entered a "Final Order," which, among other things, increased the amount of Berg's child support obligation. Berg filed a motion to amend or to make additional findings and a partial motion for new trial, challenging the trial court's calculation of his child support obligation.[1] The trial court thereafter entered an order clarifying its earlier findings, noting specifically that it had imputed Berg's gross income in determining his child

---

[1] The Final Order also modified custody, but Berg does not challenge that portion of the Order.

support obligation, see OCGA §§ 19-6-15 (f) (4) (A), (f) (4) (B), but otherwise denied Berg's motion. Berg filed an application for discretionary appeal, which we granted, and this timely appeal followed. As more fully set forth below, we now affirm.

In the appellate review of an order in child support proceedings, this Court will not set aside the trial court's factual findings unless they are clearly erroneous, and we properly give due deference to the opportunity of the trial court to assess the credibility of the witnesses. But when a question of law is at issue, we review the trial court's decision de novo. See *Cousin v. Tubbs*, 353 Ga. App. 873, 879-880 (3) (a) (840 SE2d 85) (2020); see also *Marlowe v. Marlowe*, 297 Ga. 116, 119 (2) (772 SE2d 647) (2015).

The first step in calculating child support under Georgia's child support guidelines is to determine each parent's gross monthly income. *Franco v. Eagle*, 361 Ga. App. 506, 507 (1) (a) (864 SE2d 675) (2021); *Cousin*, 353 Ga. App. at 880 (3) (i). Here, the trial court imputed the Father's gross monthly income by averaging his monthly expenses for 2019 and 2020. In cases like this one involving child support modifications, OCGA § 19-6-15 (f) (4) (B) provides that a parent's income may be imputed

[w]hen . . . a parent fails to produce reliable evidence of income, such as tax returns for prior years, check stubs, or other information for determining current ability to pay child support or ability to pay child support in prior years, and the court or the jury has no other reliable evidence of such parent's income or income potential, the court or the jury may impute income as set forth in subparagraph (A) of this paragraph, . . . .

In addition to mirroring the language of subparagraph (B) concerning reliable evidence of income,[2] subparagraph (A) identifies factors that a factfinder should consider in imputing income, providing in relevant part that

the court or the jury shall take into account the specific circumstances of the parent to the extent known, including such factors as the parent's assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, health, criminal record and other employment barriers, and record of seeking work as well as the local job market, the availability of employers willing to hire the parent, the prevailing earnings level in the local community, and other relevant background factors in the case.

As to Berg's income, the evidence shows that, along with his current wife, Berg owns and operates a dog-breeding business, which at the relevant time period

---

[2] Subparagraph (f)(4)(A) applies in initial determinations of child support. See *Franco*, 361 Ga. App. at 508 (1) (a).

was the primary source of his income.[3] Evidence was presented concerning the current favorable market in the dog-breeding industry, as well as other factors such as the challenges Berg and his current wife had recently faced in operating the business. Further, the trial court heard evidence concerning both one-time and ongoing expenses associated with the business.

Berg was also extensively questioned concerning discrepancies in his various financial documents, which he was unable to explain. He also could not explain why certain income was included on some documents but not others and, especially, why deposits into his bank account far exceeded his reported income. Berg also included expenses for a one-time home renovation undertaken to accommodate the dog-breeding business but then attempted to portray those expenses as on-going by referring to major purchases, such as a new truck and tractor, that might be needed in the future. Berg's current wife also gave vague testimony about certain income and expenses and likewise could not provide an explanation for the various discrepancies in the financial documents.

---

[3] Berg had also worked as a handyman, but that work had diminished during the COVID-19 pandemic.

Based on this and other evidence, the trial court found[4] the evidence concerning Berg's gross income to be "inconsistent, contradictory, and consequently, unreliable." Additionally, the trial court found that Berg had not put forth any "real effort" to provide information to enable the court to ascertain his income. Accordingly, the trial court imputed Berg's income as permitted by OCGA § 19-6-15 (f) (4) (B), arriving at the figure of $9,078 per month by averaging Berg's monthly expenses listed on his 2019 and 2020 Domestic Relations Financial Affidavits (DRFAs).

1. Berg first contends that the trial erred by imputing his income because he provided evidence of his self-employment income and expenses in the form of tax returns, DRFAs, bank statements, and other itemized income and expense statements, and such evidence was admitted without objection. We recently rejected a similar argument in *Franco*, 361 Ga. App. at 508-509 (1) (a), and we reach the same result here.

As our Supreme Court has explained, there are two "conditions precedent to" imputing gross income under OCGA § 19-6-15 (f) (4) (B) in cases involving

---

[4] The trial court's findings were made orally following the hearing, in the Final Order, and in the Order denying Berg's motion to amend.

5

modification of child support: "(1) a parent's failure to produce 'reliable evidence of income' and (2) the absence of any other reliable evidence of such parent's income or income potential." (Citation and punctuation omitted.) *Jackson v. Sanders*, 299 Ga. 332, 334 (788 SE2d 387) (2016).[5] Although it is true that Berg produced evidence of some types of reliable income mentioned in subsections (f) (4) (A) and (f) (4) (B), "nothing in [those subparagraphs] suggests that production of the type of evidence mentioned as *examples* of reliable evidence of income forecloses a court from imputing income." (Emphasis in original.) *Franco*, 361 Ga. App. at 509 (1) (a). Further, simply because certain records and documents concerning Berg's income and expenses were admitted without objection does not automatically mean that such evidence constituted *reliable* evidence of his income. Moreover, nothing in OCGA § 19-6-15 (f) (4) (A) precludes a trial court from considering, as it did here, the amount that a parent pays in expenses to determine how much income should be imputed, as the fact that a parent's expenditures – particularly expenses that are apparently being paid from income generated by the parent – exceeds the income the

---

[5] We note that, when *Jackson* was decided, OCGA § 9-6-15 (f) (4) (B) provided only one option for imputing income in child support modification actions – the addition of ten percent to gross income for each year since the last child support award. That subparagraph was amended in 2018, see Ga. L. 2018, p. 940, § 1-2, to also allow the trier of fact to impute income as set forth in subsection (f) (4) (A).

parent has purported to earn could certainly indicate that the parent's income is greater than he or she has reported. Here, as in *Franco*, the trial court was authorized "to determine whether a party's own representations regarding income were credible, and we will not disturb the trial court's factual findings in this regard if there is any evidence to support them." (Citation and punctuation omitted.) Id. at 510 (1) (a).

Further, Berg argues that because at least some of the evidence concerning his income was reliable, the trial court should have resolved any other inconsistences in the evidence instead of imputing his income. But our Supreme Court has rejected the claim that "documentation of some indeterminate portion of a parent's total income suffices to insulate the parent from the reach of subparagraph (4) (f) (B)." *Jackson*, 299 Ga. at 336 (construing the phrase "reliable evidence of income"). See also *Franco*, 361 Ga. App. at 509-510 (1) (a).

Berg also contends that the trial court failed to take into account the specific factors listed in OCGA § 19-6-15 (f) (4) (A), such as his assets, job skills, education, and other factors listed in that subparagraph. However, Berg did not request that the trial court make specific findings of fact concerning these factors. As we explained in *Franco*,

nothing in that subparagraph (f) (4) (A) requires the trial court to do so in the absence of a party's request. Compare OCGA § § 19-6-15 (b) (8) and 19-6-15 (c) (2) (E) (findings of fact required when trial court deviates from the presumptive amount of child support). Further, in the absence of a contrary showing, the trial court will be presumed to have followed the law.[6] (Citation and punctuation omitted.) *Dallow v. Dallow*, 299 Ga. 762, 777 (4) (791 SE2d 20) (2016).

(Punctuation omitted.) *Franco*, 361 Ga. App. at 510 (1) (b).

2. Berg next contends that the trial court misapplied and misinterpreted OCGA § 19-6-15 (f) (4) (D) when imputing his income because there is no evidence that he was willfully or voluntarily unemployed or underemployed. But the trial court did not reference that subparagraph in the Final Order, the order denying the motion to amend, or its oral ruling, and the only apparent basis for Berg's argument that the trial court implicitly considered him voluntarily unemployed/ underemployed is a citation to a case involving subparagraph (f) (4) (D) in the trial court's order denying Berg's motion to amend. See *Spirnak v. Meadows*, 355 Ga. App. 857, 866 (b) (844 SE2d

---

[6] The statute provides that the trier of fact "shall take into account the specific circumstances of the parent to the extent known." OCGA § 19-6-15 (f) (4) (A). Here, the trial court heard evidence concerning the specific circumstances pertinent to Berg's business, including how long he had operated the business with his current wife, the current market for the dogs they breed, and recent challenges they had faced.

482) (2020). But the trial court merely quoted that case for the general proposition that the trier of fact is not required to use the self-employment calculator when imputing income; the trial court did not indicate that it was relying on *Spirnak* as a rationale to impute income under subparagraph (f) (4) (D). There is simply no merit to Berg's argument that the trial court improperly relied on subparagraph (f) (4) (D) in imputing his income, and, accordingly, this argument is misplaced.

3. The remainder of Berg's arguments focus on the trial court's failure to take into consideration factors that would have been pertinent if the trial court had computed his child support obligation based on his self-employment income. See OCGA § 19-6-15 (f) (1) (B), (f) (5) (A). However, these provisions are inapplicable here since the trial court instead imputed Berg's income under OCGA § 19-6-15 (f) (4) (A) and (f) (4) (B), and Berg's arguments are once again misplaced. Accordingly, the trial court's order is affirmed.

*Judgment affirmed. Rickman, C. J., and Miller, P. J., concur*.